### SETH WILLIAMS *vs.* JONATHAN INGELL.

An entry in the books of the proprietors of common lands, was thus : "Aug. 13, 1742. At the request of W. is granted to the right originally P.'s, half an acre of land on the ten acre division, between said W.'s house and G.'s orchard." A subsequent entry in said books, under date of November 6, 1752, was thus : " Took an account of the lands that W. had granted and laid out on the purchased rights he owns and what lands he bought by deed." At the close of this entry, after a description of other lands, was added — " Ten acre division, Aug. 13, 1742, on P.'s right. between his house and G.'s orchard, 80 rods." — By a vote of the same proprietors, passed in 1736, a certain committee was empowered to allot the ten acre division to the several grantees.

*Held*, that the entry of November, 1752, furnished evidence that the original grant was to W. in his own right.

*Held*, that the vote of 1736 did not render any act of the committee necessary in order to vest in the original grantee the title to any parcel of land, so defined by metes and bounds, &c. in the original grant, as to identify such parcel : *Held* further, that the description of the half acre lot, in the original grant of 1742, was so definite, that, if it did not exceed what was intended to pass for half an acre, by the scale of admeasurement then adopted, a jury might, and probably ought to find that it was intended, without the further act of a locating committee, to enure to the grantee as a grant of the whole parcel within the limits described, and vested the estate in him.

WRIT of entry to recover a small parcel of land in Taunton. The demandant counted on his own seizin and a disseizin by the tenant.

At the trial before the chief justice, the demandant relied on a grant, from the original proprietors of the township of Taunton, to his great-grandfather, Samuel Williams, and a transmission of the title by devise, descent, and grant, to himself. To prove said grant to said Samuel, an entry in the books of said proprietors, Vol. II. p. 231, bearing date August 13th, 1742, was produced in evidence by the demandant, in these words : " At the request of Samuel Williams, Esq. granted to the rights originally William Phillips' half an acre of land on the ten acre division ; the said half acre to lay on the westerly side of the great river adjoining to the easterly side of the highway that leads from the weir bridge to the dwellinghouse of Elnathan Thrasher, and lieth between said Williams' dwellinghouse and Thomas Gilbert's orchard."

As it was considered, in a former action respecting this land,

21 Pick. 288, that said entry only proved, if any proof of grant at all, a grant made at the request of Samuel Williams, and not *to* him, the demandant produced another entry in said books, of the date of November 6th, 1752, as follows : " Took an account of the lands that Major Samuel Williams had granted and laid out on the purchased rights he owns and what land he bought by deed." Five different parcels of land are then mentioned, amounting to 102 acres, 137 rods and 14 feet. In said account there is also a debit of account against said Williams, in these words : " Ten acre division, Aug. 13th, 1742, on Phillips's right, between his house and Gilbert's orchard, 80 rods."

The tenant then gave in evidence the votes of the original proprietors, passed on the 30th of August, 1736, under which the ten acre division was directed to be made, which votes showed that the location was to be made by the committee therein mentioned and a surveyor, and a return of each grant or allotment was to be made by such committee, or a majority of them, to be recorded in the proprietors' books.

No evidence was offered of any return by said committee in relation to said 80 rods of land between the weir bridge and Gilbert's orchard.

The demandant gave in evidence the will of Samuel Williams, dated in 1764, by which he made his son Seth Williams his residuary devisee ; also the will of Seth Williams, made in April, 1804, by which his son Nathaniel Williams was made residuary devisee. Said wills were broad enough to pass such real estate, not specifically devised, as the devisors died seized of, but contained no description embracing the land demanded in this suit.

Said Nathaniel Williams died intestate, and the demandant is his son and one of his heirs at law. The other heirs of said Nathaniel conveyed their rights in his estate to the demandant.

No evidence was given to prove that either said Samuel Williams, Seth Williams or Nathaniel Williams, was ever in possession of the demanded premises.

The tenant's counsel denied that the demandant's evidence proved any title in himself, and, for another ground of defence,

offered evidence (which is stated in the opinion of the court) to disprove the seizin of the demandant, by proving a seizin in Jonathan Ingell, the tenant's father.

A verdict was taken for the tenant, by consent, which was to be set aside and a new trial granted, if the whole court should be of opinion that the evidence proves a title in the demandant's ancestor, Samuel Williams, and that it was regularly transmitted to the demandant, and that the evidence offered by the tenant does not prove a seizin in Jonathan Ingell and make a good defence for the tenant : otherwise, judgment to be entered on the verdict.

*Williams, pro se.*    (*Coffin* was with him.)

*Holmes,* for the tenant.

PUTNAM, J.    The demandant deduces his title from his great-grandfather Samuel Williams, and relies upon an entry in the proprietors' books, (B. 2, page 231,) of the date of 1742, as evidence of a grant to said Samuel Williams.    It is in the following words : " August 13, 1742.    At the request of Samuel Williams, Esq. granted to the rights originally William Phillips' half an acre of land on the ten acre division ; the said half acre to lay on the westerly side of the great river adjoining to the easterly side of the highway that leads from the weir bridge to the dwellinghouse of Elnathan Thrasher, and lieth between the said Williams' dwellinghouse and Thomas Gilbert's orchard."

In a former trial of an action on the same title, between the present demandant and the father of the present tenant, it was held that although this small tract was laid out at the request of Samuel Williams, yet it did not follow that it was laid out to him as grantee ; and as the burden of proof was upon the demandant, and this was the only proof of his title, it was not sufficient to establish it.    21 Pick. 288.    But though this record is not proof of title in the demandant's ancestor, yet it afforded no proof to the contrary.    It might be considered as probable that it was laid out to him, but was not competent proof of title.

But the demandant has now offered evidence tending strongly to prove that the said grant was made to Williams in his own

right, upon the original right of Phillips. The paper, relied up-
on for this purpose, is an extract from the proprietors' records,
dated November 6th, 1752, as follows — "took an account of
the lands that Major Samuel Williams had granted and laid out
*on the purchased* rights *he owns,* and what *land he bought by
deed.*" And in the aforesaid account of the land credited to
Samuel Williams, there is a debit of account against him, and
among other charges one is as follows, viz: "Ten acre divis-
ion, Aug': 13, 1742. On Phillips' right between his house and
Gilbert's orchard 80 rods." Here it is expressly stated that
the land, that Samuel Williams had granted and laid out, was
*on rights which he owned,* and the 80 rods of land are expressly
mentioned, and described as laid out and granted to him in
satisfaction of the land due to him.

From this evidence, we think that the proof of title, which
was wanting in the former case, is supplied, and that this was
a grant not only made at the request of Williams, but to him as
grantee, for his own use. These entries in the proprietors'
books render definite and certain what was equivocal in the
terms of the grant of 1742, and furnish evidence that the right,
thereby intended to be granted, was granted to and vested in him.

As to the other point, whether this grant vested any title in
the particular parcel of land, until some further act done by the
committee appointed to make locations — the principle is laid
down in the former case. If the grant was of a parcel suffi-
ciently defined by metes and bounds, and description, to identify
a particular tract, then no further act of a committee would be
necessary. But if the grant was, to have a certain quantity set
off out of a larger parcel designated by a general description,
then a return of the locating committee might be necessary,
specifying, by metes and bounds, what particular parcel the
grantee should hold, before the title to such parcel would vest in
the grantee to hold in severalty. The court are strongly inclined
to the opinion, that the parcel in question is so defined by metes
and bounds, as to pass without further act of location. It is land
lying between the river on one side, and the highway on the
other, and between said Williams's house and Gilbert's orchard.

If this does not exceed eighty rods, or half an acre, or such as according to the scale of admeasurement was intended to pass for half an acre, then no further location was necessary. This is strengthened by the consideration that this is recognized and mentioned in the proprietors' books, as land which had been granted to Williams. During the time which has elapsed since that grant, the river or the highway may have somewhat changed its lines ; so that it would not follow that the whole was not then half an acre, though it may be more now. And further ; from the known mode of adopting an artificial scale of admeasurement in those locations, differing considerably from the true mathematical admeasurement, it would not follow, because it actually exceeded eighty rods, accurate admeasurement, that therefore it was not intended to be set off and appropriated as and for half an acre in the division. It was evidence from which a jury might, and probably ought to find, that this was intended, without further act of a locating committee, to enure to the grantee, as a grant of the whole of the parcel within the limits described, and therefore vested the estate in him, according to the rule applied to such ancient votes of proprietors of lands held as tenants in common.

In the absence of proof of actual ouster or adverse possession, the right of possession follows the right of the property.

The demandant has proved a regular title from the said Samuel Williams by devise and descent, and is entitled to recover, unless the tenant can show such a disseizin as defeats the action.

The tenant offered evidence to disprove the seizin of the demandant, and to prove a seizin in his father, Jonathan Ingell ; viz. a deed from Nathaniel Gilbert to Samuel Williams, March 28th, 1750, bounded as follows ; " one certain tract of land situate in Taunton aforesaid, and contains five acres more or less, bounded southerly and easterly by Taunton Great River ; westerly by the highway leading from the weir bridge to the dwellinghouse of Isaac Williams ; northerly by land of Sam'l Williams, or however otherwise bounded ; and is all the great orchard called Thom' Gilbert's, late of Taunton deceased."

It will be recollected that the grant of 1742 described the land as being between the dwellinghouse of Samuel Williams and Thomas Gilbert's orchard, and therefore cannot be included in this description.

The tenant also offered the will of Samuel Williams, devising to his wife Abigail the land which he bought of Nathaniel Gilbert, called the great orchard adjoining Taunton River ; and by sundry deeds and wills he deduces the title to *that estate* from Samuel Williams to Jonathan Ingell under whom the tenant claims. And Jonathan Ingell in April 1742 entered and built his house on part of that land. And the tenant contends that the grant from Gilbert to Samuel Williams, and the deeds and wills last referred to, embrace the demanded premises. But we think that deed does not necessarily extend westerly and southerly to the weir bridge, and does not show an adverse title in Jonathan Ingell in 1792.

As was before said, the right of possession follows the right of property, which upon the record or paper title is in the demandant. The seizin, which is proved to have been in the ancestor of the demandant, is presumed by law to continue in him and his heirs and assigns, until proof of the contrary shall be given by the tenant.

A new trial is granted, and the jury are to be instructed conformably to the principles above stated.

It is to be left to the jury to find whether Jonathan Ingell *actually disseized* the demandant or his ancestor in 1792, or at any time before thirty years next before this action was brought — and he and his heirs and assigns continued to hold the same *adversely* — adversely to the demandant or his ancestor. If the jury find such a disseizin, and that it was so adverse and so continued, then their verdict should be given for the tenant. But otherwise their verdict should be given for the demandant.